IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

|  |  |  |
|---|---|---|
| CHRISTIE BISHOP, individually and on behalf of all others similarly situated, | ) ) ) ) | Civil No._____ |
|  | ) |  |
| Plaintiff, | ) ) | **CLASS ACTION COMPLAINT** |
| v. | ) ) |  |
| AFLAC INCORPORATED, | ) ) | Jury Trial Demanded |
| Defendant. | ) ) |  |

Plaintiff, Christie Bishop ("Plaintiff"), individually and on behalf of the

Class defined below, hereby brings this complaint against Defendant AFLAC

Incorporated ("Defendant" or "AFLAC"), based upon Plaintiff's personal

knowledge and on information and belief:

## SUMMARY OF THE CASE

1.     This action arises from Defendant's failure to secure the personally

identifiable information ("PII")[1] and protected health information ("PHI")[2]

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

[2] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.*, and its implementing regulations ("HIPAA"), "protected health information" is defined as individually

(collectively, "Private Information") of Plaintiff and the proposed Class members, where Plaintiff provided her Private Information to Defendant for supplemental insurance services and products.

2.      According to the Aflac website:

[Defendant] is a Fortune 500 company, providing financial protection to millions of policyholders and customers through its subsidiaries in the U.S. and Japan. When a policyholder or insured gets sick or hurt, Aflac pays cash benefits promptly, for eligible claims, directly to the insured (unless assigned otherwise). For more than six decades, Aflac voluntary insurance policies have given policyholders the opportunity to focus on recovery, not financial stress.[3]

3.      On or about June 20, 2025, Defendant began sending emails entitled "Aflac Cybersecurity Incident" ("Notice Email") to Plaintiff and Class Members, advising them that it recently detected suspicious activity on its network. In its Notice Email, Defendant advises that its investigation into the cybersecurity incident is ongoing and that it has yet not confirmed the extent of unauthorized activity, potentially impacted data, or the customers or other individuals impacted in the Data Breach.

---

identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103 *Protected health information*. "Business Health information such as diagnoses, treatment information, medical test results, and prescription information are considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information. *Summary of the HIPAA Privacy Rule*, DEP'T FOR HEALTH & HUM. SERVS., https://www.hhs.gov/hipaa/for-professionals/privacy/laws-egulations/index.html.
[3] https://www.aflac.com/about-aflac/default.aspx.cybersecurity incident ("Data Breach")

4. According to the Notice Email, the Private Information intruders accessed and infiltrated from Defendant's systems included claims information, health information, social security numbers, and/or other personal information, related to customers, beneficiaries, employees, agents, and other individuals in Defendant's U.S. business.

5. As a result of the Data Breach, which Defendant failed to prevent, the Private Information of Plaintiff and the proposed Class Members was stolen.[4]

6. Instead, Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement reasonable measures to safeguard the Private Information of its current and former customers, beneficiaries, employees, agents, and other individuals in its U.S. business, and by failing to take necessary steps to prevent unauthorized disclosure of that information. Defendant's woefully inadequate data security measures made the Data Breach a foreseeable, and even likely, consequence of its negligence.

7. As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of

---

[4] *Id.*

value of their Private Information; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the stolen Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) "out of pocket" costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) expense and time spent on initiating fraud alerts and contacting third parties; (k) decreased credit scores; (l) anxiety, annoyance, and nuisance; and (m) continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

8.      Plaintiff and Class Members would not have provided their valuable Private Information had they known that Defendant would make their Private Information Internet-accessible, not encrypt personal and sensitive data elements, and not delete the Private Information it no longer had reason to maintain.

9.      Through this lawsuit, Plaintiff seeks to hold Defendant responsible for the injuries they inflicted on Plaintiff and Class Members due to their impermissibly inadequate data security measures, and to seek injunctive relief to ensure the implementation of security measures to protect the Private Information that remains in Defendant's possession.

10.     The exposure of one's Private Information to cybercriminals is a bell that cannot be un-rung. Before this Data Breach, Plaintiff's and the Class Members' Private Information was exactly that—private. Not anymore. Now, their Private Information is forever exposed and unsecure.

## PARTIES, JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of Class Members is in the millions, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

12.     This Court has personal jurisdiction over Defendant because it is a Georgia corporation that operates and has its principal place of business in this District and conducts substantial business in this District.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendant is domiciled in this District, maintains Plaintiff's and Class Members' Private Information in this District, and has caused harm to Plaintiff and Class Members in this District.

14.     Plaintiff is a resident citizen of Murfreesboro, Tennessee.

15.     Defendant is a Georgia corporation with its headquarters and principal place of business located at 1932 Wynnton Road, Columbus, Georgia 31999.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

### A.     **The Data Breach**

16.     Plaintiff and Class Members were required to provide Defendant with their sensitive and confidential Private Information, including their names, claims information, health information, Social Security numbers, and other sensitive information, that at the time of the Data Breach were held by Defendant in its computer systems.

17.     The Notice Email sent by Defendant to Plaintiff and Class Members states:

> We are writing to inform you of a cybersecurity incident at Aflac that may have impacted data we maintain about our policies.
>
> **What Happened**
>
> Aflac recently detected suspicious activity on its network. Upon detection, we promptly took steps to contain the activity and launched an investigation with the support of third-party experts. While it is unfortunate that this has occurred, we want to let you know what it means for you and what we are doing to support customers as we work diligently to respond to and navigate this incident.
>
> ….
>
> [T]he investigation remains in its early stages. At this time, we have not confirmed the extent of unauthorized activity, potentially impacted data, or the customers or other individuals impacted. We have commenced a review of potentially impacted files. It is

important to note that the review is in its early stages, and we are unable to determine the total number of affected individuals until that review is completed. The potentially impacted files may contain claims information, health information, social security numbers, and/or other personal information, related to customers, beneficiaries, employees, agents, and other individuals in its U.S. business. Based on intelligence coming from the cybersecurity community, we have been told that this incident may be part of a broader series of cyber-attacks targeting the insurance industry.

18.    In the Notice Email, Defendant offers Plaintiff and Class Members 24 months of credit monitoring and provides a dedicated call center to answer questions they may have about the Data Breach.

19.    In the context of notice of data breach communications of this type, Defendant's use of the phrase "may have impacted data" is misleading lawyer language. Companies only send notice letters because data breach notification laws require them to do so. And such letters are only sent to those persons who Defendant itself has a reasonable belief that such personal information was accessed or acquired by an unauthorized individual or entity. Defendant cannot hide behind legalese; by sending a Notice Letter to Plaintiff and Class Members, it admits that Defendant itself has a reasonable belief that Plaintiff's and Class Members' Private Information was accessed or acquired by cybercriminals.

20.    On June 20, 2025, Defendant also posted a press release on its website, entitled "Aflac Incorporated Discloses Cybersecurity Incident" ("Online Disclosure"). The Online Disclosure states:

On June 12, 2025, Aflac Incorporated (NYSE: AFL) identified suspicious activity on our network in the United States. We promptly initiated our cyber incident response protocols and stopped the intrusion within hours. Importantly, our business remains operational, and our systems were not affected by ransomware. We continue to serve our customers as we respond to this incident and can underwrite policies, review claims, and otherwise service our customers as usual. This attack, like many insurance companies are currently experiencing, was caused by a sophisticated cybercrime group. This was part of a cybercrime campaign against the insurance industry.

We have engaged leading third-party cybersecurity experts to support our response to this incident. While the investigation remains in its early stages, in the spirit of transparency and care for our customers, we are sharing that our preliminary findings indicate that the unauthorized party used social engineering tactics to gain access to our network. Additionally, we have commenced a review of potentially impacted files. It is important to note that the review is in its early stages, and we are unable to determine the total number of affected individuals until that review is completed. The potentially impacted files contain claims information, health information, social security numbers, and/or other personal information, related to customers, beneficiaries, employees, agents, and other individuals in our U.S. business. We remain committed to caring for and supporting our customers. While our teams work to review the potentially impacted data and determine the specific information involved, we are offering any individual who contacts our dedicated call center free credit monitoring and identity theft protection, and Medical Shield for 24 months.[5]

21.    Defendant did not use reasonable security procedures and practices

appropriate to the nature of the sensitive information it was maintaining for Plaintiff

and Class Members, such as encrypting the information or purging it when it is

no longer needed, causing the exposure of Private Information.

---

[5] https://newsroom.aflac.com/2025-06-20-Aflac-Incorporated-Discloses-Cybersecurity-Incident.

22.    As evidenced by the Data Breach, the Private Information contained in Defendant's network was not encrypted. Had the information been properly encrypted, the data thieves would have exfiltrated only unintelligible data.

**B.    The Information Stolen in the Data Breach is Highly Valuable.**

23.    Unfortunately, the market for stolen Private Information is at an all-time high.  In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[6]

24.    When malicious actors infiltrate companies and steal Private Information that those companies store, that stolen information often ends up on the dark web because the perpetrators buy and sell that information for profit.[7] According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.

---

[6] https://www.cisa.gov/sites/default/files/2023-01 CISA_MSISAC_Ransomware%20Guide_8508C.pdf.
[7] https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring.

25.    The exposure of Plaintiff's and Class Members' Private Information to cybercriminals will continue to cause substantial risk of future harm (including identity theft) that is continuing and imminent in light of the many different avenues of fraud and identity theft utilized by third-party cybercriminals to profit off of this highly sensitive information.

### C.    AFLAC Failed to Comply with Regulatory Requirements and Standards.

26.    In failing to adequately secure Plaintiff's and Class Members' sensitive data, Defendant breached duties they owed Plaintiff and Class Members under statutory and common law. Under HIPAA, health insurance providers and business associates have an affirmative duty to keep patients' PHI private. As covered entities, Defendant has a statutory duty under HIPAA and other federal and state statutes to safeguard Plaintiff's and Class Members' data. Moreover, Plaintiff and Class Members surrendered their highly sensitive personal data to Defendant under the implied condition that Defendant would keep it private and secure. Accordingly, Defendant also had an implied duty to safeguard their data independent of any statute.

27.    Because Defendant is covered by HIPAA (45 C.F.R. § 160.102), it is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of

Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

28.    HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for protecting health information.

29.    HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

30.    HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

31.    "Electronic protected health information" is "individually identifiable health information […] that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

32.    HIPAA's Security Rule requires Defendant to do the following:

  i. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

  ii. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

iii.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

iv.    Ensure compliance by its workforce.

33.    HIPAA also requires Defendant to "review and modify the security measures implemented […] as needed to continue provision of reasonable and appropriate protection of electronic protected health information" under 45 C.F.R. § 164.306(e), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

34.    Moreover, the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

35.    Defendant is also required to follow the regulations for safeguarding electronic medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

36.    Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC")

has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

37.    According to the FTC, the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant's, should employ to protect against the unlawful exposure of PHI/PII.

38.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for businesses.  The guidelines explain that companies should:

  i.    protect the sensitive consumer information that they keep;

  ii.    properly dispose of PHI/PII that is no longer needed;

  iii.    encrypt information stored on computer networks;

  iv.    understand their network's vulnerabilities; and

  v.    implement policies to correct security problems.

39.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

40.     The FTC recommends that companies not maintain information longer than is necessary for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the networks, and verify that third-party service providers have implemented reasonable security measures.

41.     The FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

42.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PHI/PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

43.     In addition to their obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PHI/PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class

Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected Plaintiff's and Class Members' PHI/PII.

44.    Defendant owed a duty to Plaintiff and Class Members to design, maintain, and test their computer systems, servers, and networks to ensure that all PHI/PII in their possession was adequately secured and protected.

45.    Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect all PHI/PII in their possession, including not sharing information with other entities who maintain sub-standard data security systems.

46.    Defendant owed a duty to Plaintiff and Class Members to implement processes that would immediately detect a breach of their data security systems in a timely manner.

47.    Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

48.    Defendant owed a duty to Plaintiff and Class Members to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PHI/PII from theft, because such an inadequacy would be a material fact in the decision to entrust this PHI/PII to Defendant.

49.    Defendant owed a duty of care to Plaintiff and Class Members

15

because they were foreseeable and probable victims of any inadequate data security practices.

50.    Defendant owed a duty to Plaintiff and Class Members to encrypt and secure and/or more reliably encrypt and secure Plaintiff's and Class Members' PHI/PII and monitor user behavior and activity to identify possible threats.

51.    Various cybersecurity industry best practices have been published regarding an organization's cybersecurity standards. The Center for Internet Security ("CIS") promulgated its Critical Security Controls, which identify the most commonplace and essential cyber-attacks that affect businesses every day and proposes solutions to defend against those cyber-attacks.[8] All organizations collecting and handling Private Information, such as Defendant, are strongly encouraged to follow these controls. Further, the CIS Benchmarks are the overwhelming option of choice for auditors worldwide when advising organizations on the adoption of a secure build standard for any governance and security initiative.

52.    Moreover, several best practices have been identified that a minimum should be implemented by data management companies like Defendant, including but not limited to securely configuring business software, managing

---

[8] Center for Internet Security, *Critical Security Controls*, at 1 (May 2021), ps://learn.cisecurity.org/CIS-Controls-v8-guide-pdf.

access controls and vulnerabilities to networks, systems, and software, maintaining network infrastructure, defending networks, adopting data encryption while data is both in transit and at rest, and securing application software.[23] Defendant, however, failed to follow these and other industry standards to adequately protect the Private Information of Plaintiff and Class Members.

### D.     Plaintiff and Class Members Have Suffered Damages.

53.     As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting Data Breach, Plaintiff and Class Members have already been harmed by the fraudulent misuse of their Private Information, and have been placed at an imminent, immediate, and continuing increased risk of additional harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate both the actual and potential impact of the Data Breach on their lives. Such mitigatory actions include, *inter alia*, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, sorting through dozens of phishing and spam emails, texts, and phone communications, and filing police reports. This time has been lost forever and cannot be recaptured.

54.     Defendant's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class Members' Private Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff bring this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of Plaintiff and the following "Class:"

> All individuals within the United States whose PHI/PII was exposed to unauthorized third parties as a result of the Data Breach.

56.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors and any entity in which Defendant has a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsel, and/or subdivisions, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

57.     This action has been brought and may properly be maintained as a

class action under F.R.C.P. Rule 23 because there is a well-defined community of interest in the litigation and membership of the proposed Class is readily ascertainable.

58.    **Numerosity**: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Class are so numerous that joinder of all members is impractical, if not impossible. Plaintiff is informed and believes and, on that basis, alleges that the total number of Class Members is in the thousands of individuals. Membership in the Class will be determined by analysis of Defendant's records.

59.    **Commonality**: Plaintiff and the Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

    i.      Whether Defendant had a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using and/or safeguarding their PHI/PII;

    ii.     Whether Defendant knew or should have known of the susceptibility of their data security systems to a data breach;

    iii.    Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

    iv.    Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

    v.     Whether Defendant failed to comply with its own policies and

applicable laws, regulations and industry standards relating to data security;

vi.     Whether Defendant adequately, promptly and accurately informed Plaintiff and Class Members that their PHI/PII had been compromised;

vii.    How and when Defendant actually learned of the Data Breach;

viii.   Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PHI/PII of Plaintiff and Class Members;

ix.     Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

x.      Whether Defendant engaged in unfair, unlawful or deceptive practices by failing to safeguard Plaintiff's and Class Members' PHI/PII;

xi.     Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct;

xii.    Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

60.    **Typicality**: Plaintiff's claims are typical of the claims of the Plaintiff Class. Plaintiff and all members of the Plaintiff Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

61.    **Adequacy of Representation**: Plaintiff in this class action is an adequate representative of each of the Plaintiff Class in that Plaintiff have the same

interest in the litigation of this case as the Class Members, are committed to the vigorous prosecution of this case and have retained competent counsel who are experienced in conducting litigation of this nature. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the Class in their entirety. Plaintiff anticipates no management difficulties in this litigation.

62. **Superiority**: The damages suffered by individual Class Members are significant but may be small relative to each member's enormous expense of individual litigation. This makes or may make it impractical for members of the Plaintiff Class to seek redress individually for the wrongful conduct alleged herein. Even if Class Members could afford such individual litigation, the court system could not. Should separate actions be brought or be required to be brought by each individual member of the Plaintiff Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately. Individualized litigation increases the delay and expense to all parties and to the court system, presented by the case's complex legal and factual issues. By contrast, the class action device presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

63.    Class certification is proper because the questions raised by this Complaint are of common or general interest affecting numerous persons, so it is impracticable to bring all Class Members before the Court.

64.    This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate concerning the Class in their entireties. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly. Plaintiff's challenge of these policies and procedures hinges on Defendant's conduct concerning the Class in their entirety, not on facts or law applicable only to Plaintiff.

65.    Unless a Class-wide injunction is issued, Defendant may continue failing to secure Class Members' PHI/PII properly, and Defendant may continue to act unlawfully, as set forth in this Complaint.

66.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under

F.R.C.P. Rule 23(b)(2).

## CLAIMS FOR RELIEF

## COUNT ONE

## <u>NEGLIGENCE</u>

67.     Plaintiff realleges the allegations above as if fully set forth herein.

68.     At all times herein relevant, Defendant owed Plaintiff and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their PHI/PII and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing Plaintiff's and Class Members' PHI/PII on their computer systems and networks.

69.     Among these duties, Defendant was expected:

  i.      to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the PHI/PII in their possession;

  ii.     to protect Plaintiff's and Class Members' PHI/PII using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

  iii.    to implement processes to detect the Data Breach quickly and to act on warnings about data breaches timely; and

  iv.     to promptly notify Plaintiff and Class Members of any data breach, security incident or intrusion that affected or may have affected their PHI/PII.

70.     Defendant knew or should have known that the PHI/PII was private and confidential and should be protected as private and confidential and, thus,

Defendant owed a duty of care to not subject Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

71.    Defendant knew or should have known of the risks inherent in collecting and storing PHI/PII, the vulnerabilities of their data security systems and the importance of adequate security. Defendant knew or should have known about numerous well-publicized data breaches.

72.    Defendant knew or should have known that their data systems and networks did not adequately safeguard Plaintiff's and Class Members' PHI/PII.

73.    Only Defendant was in the position to ensure that their systems and protocols were sufficient to protect the PHI/PII that Plaintiff and Class Members had entrusted to it.

74.    Defendant breached their duties to Plaintiff and Class Members by failing to provide fair, reasonable, and/or adequate computer systems and data security practices to safeguard their PHI/PII.

75.    Because Defendant knew that a breach of their systems could damage numerous individuals, including Plaintiff and Class Members, Defendant had a duty to adequately protect their data systems and the PHI/PII stored thereon.

76.    Plaintiff's and Class Members' willingness to entrust Defendant with their PHI/PII was predicated on the understanding that Defendant would take

adequate security precautions. Moreover, only Defendant could protect their systems and the PHI/PII it stored on them from attack. Thus, Defendant had a special relationship with Plaintiff and Class Members.

77. Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Plaintiff's and Class Members' PHI/PII and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant, Plaintiff, and/or the remaining Class Members.

78. Defendant breached its general duty of care to Plaintiff and Class Members in, but not necessarily limited to, the following ways:

     i.     by failing to provide fair, reasonable and/or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PHI/PII;

    ii.     by failing to timely and accurately disclose that Plaintiff's and Class Members' PHI/PII had been improperly acquired or accessed;

   iii.     by failing to adequately protect and safeguard PHI/PII by knowingly disregarding standard information security principles, despite obvious risks and by allowing unmonitored and unrestricted access to unsecured PHI/PII;

   iv.     by failing to provide adequate supervision and oversight of the PHI/PII with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Plaintiff's and Class Members' PHI/PII, misuse the PHI/PII and intentionally disclose it to others without consent;

    v.     by failing to adequately train their employees not to store more

information than absolutely necessary;

vi.     by failing to consistently enforce security policies aimed at protecting Plaintiff's and Class Members' PHI/PII;

vii.    by failing to implement processes to quickly detect data breaches, security incidents or intrusions; and

viii.   by failing to encrypt Plaintiff's and Class Members' PHI/PII and monitor user behavior and activity in order to identify possible threats.

79.     Defendant's willful failure to abide by these duties was wrongful, reckless and/or grossly negligent in light of the foreseeable risks and known threats.

80.     As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harm and damages (as alleged above).

81.     The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the PHI/PII to Plaintiff and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PHI/PII.

82.     Defendant breached its duty to notify Plaintiff and Class Members of the unauthorized access by waiting roughly two months after learning of the Data Breach to notify Plaintiff and Class Members and then by failing and continuing to fail to provide Plaintiff and Class Members sufficient information regarding the

breach. To date, Defendant has not provided sufficient information to Plaintiff and Class Members regarding the extent of the unauthorized access, and continues to breach their disclosure obligations to Plaintiff and Class Members.

83.    Further, explicitly failing to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their PHI/PII and access their medical records and histories.

84.    There is a close causal connection between Defendant's failure to implement security measures to protect Plaintiff's and Class Members' PHI/PII and the harm (or risk of imminent harm suffered) by Plaintiff and Class Members. Plaintiff's and Class Members' PHI/PII was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PHI/PII by adopting, implementing and maintaining appropriate security measures.

85.    Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

86.    The damages Plaintiff and Class Members have suffered (as alleged above) and will continue to suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

87.    Additionally, 15 U.S.C. § 45 (FTC Act, Section 5) prohibits "unfair […] practices in or affecting commerce," including, as interpreted and enforced by

the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PHI/PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

88.     Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect PHI/PII and by not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PHI/PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

89.     Defendant's violation of 15 U.S.C. § 45 constitutes negligence *per se.* Defendant also violated the HIPAA Privacy and Security rules, which constitutes negligence *per se*.

90.     As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer injury, including but not limited to: (i) actual identity theft, (ii) the loss of the opportunity of how their PHI/PII is used, (iii) the compromise, publication, and/or theft of their PHI/PII, (iv) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI/PII, (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the

actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft, (vi) lost continuity in relation to their healthcare, (vii) the continued risk to their PHI/PII, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PHI/PII in their continued possession, and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PHI/PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

91.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including but not limited to anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

92.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer the continued risks of exposure of their PHI/PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PHI/PII in their continued possession.

## COUNT TWO

## NEGLIGENCE *PER SE*

93.     Plaintiff realleges the allegations above as if fully set forth herein.

94.     HIPAA requires that covered entities and business associates "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information" and "must reasonably safeguard protected health information from any intentional or unintentional use or disclosure…." 45 CFR § 164.530I.

95.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414 requires HIPAA covered entities and their business associates to provide notification to the United States Department of Health and Human Services and prominent media outlets following a data breach or any breach of unsecured protected health information, without unreasonable delay and in no event later than 60 days after discovery of a data breach.

96.     Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 prohibits companies such as Defendant from "using any unfair method of competition or unfair or deceptive act or practice in or affecting commerce," including failing to use reasonable measures to protect PHI/PII. In addition to the FTC Act, the agency also enforces other federal laws relating to consumers' privacy and security. The FTC publications and orders described above also form part of

the basis of Defendant's duty in this regard.

97.    In addition to the FTC rules and regulations and state law, other states and jurisdictions where victims of the Data Breach are located require that Defendant protects PHI/PII from unauthorized access and disclosure and timely notifies the victims of a data breach.

98.    Defendant violated HIPAA and FTC rules and regulations obligating companies to use reasonable measures to protect PHI/PII by failing to comply with applicable industry standards and by unduly delaying reasonable notice of the actual breach. Defendant's conduct was particularly unreasonable given the nature and amount of PHI/PII it obtained and stored and the foreseeable consequences of a Data Breach and the exposure of Plaintiff's and Class members' highly sensitive PHI/PII.

99.    Each of Defendant's statutory violations of HIPAA, Section 5 of the FTC Act and other applicable statutes, rules and regulations, constitute negligence *per se*.

100.    Plaintiff and Class Members are within the category of persons HIPAA and the FTC Act were intended to protect.

101.    The harm that occurred because of the Data Breach described herein is the type of harm HIPAA and the FTC Act were intended to guard against.

102.    As a direct and proximate result of Defendant's negligence *per se*,

Plaintiff and Class Members have been damaged as described herein, continue to

suffer injuries as detailed above, are subject to the continued risk of exposure of

their PHI/PII in Defendant's possession, and are entitled to damages in an amount

to be proven at trial.

## COUNT THREE

## **BREACH OF CONFIDENCE**

103.   Plaintiff realleges the allegations above as if fully set forth herein.

104.   During Plaintiff's and Class Members' interactions with Defendant,

Defendant was fully aware of the confidential nature of the PHI/PII that Plaintiff

and Class Members provided to it.

105.   As alleged herein and above, Defendant's relationship with Plaintiff

and Class Members was governed by promises and expectations that Plaintiff and

Class Members' PHI/PII would be collected, stored, and protected in confidence,

and would not be accessed by, acquired by, appropriated by, disclosed to,

encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by

unauthorized third parties.

106.   Plaintiff and Class Members provided their respective PHI/PII to

Defendant with the explicit and implicit understandings that Defendant would

protect and not permit the PHI/PII to be accessed by, acquired by, appropriated by,

disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or

viewed by unauthorized third parties.

107.    Plaintiff and Class Members also provided their PHI/PII to Defendant with the explicit and implicit understanding that Defendant would take precautions to protect their PHI/PII from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing, such as following basic principles of protecting their networks and data systems.

108.    Defendant voluntarily received, in confidence, Plaintiff's and Class Members' PHI/PII with the understanding that the PHI/PII would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by the public or any unauthorized third parties.

109.    Due to Defendant's failure to prevent, detect and avoid the Data Breach from occurring by, *inter alia*, not following best information security practices to secure Plaintiff's and Class Members' PHI/PII, Plaintiff's and Class Members' PHI/PII was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties beyond Plaintiff's and Class Members' confidence and without their expressed permission.

110.    As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and Class Members have suffered damages, as alleged herein.

111.   But for Defendant's failure to maintain and protect Plaintiff's and Class Members' PHI/PII in violation of the parties' understanding of confidence, their PHI/PII would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties. The Data Breach was the direct and legal cause of the misuse of Plaintiff's and Class Members' PHI/PII and the resulting damages.

112.   The injury and harm Plaintiff and Class Members suffered and will continue to suffer was the reasonably foreseeable result of Defendant's unauthorized misuse of Plaintiff's and Class Members' PHI/PII. Defendant knew their data systems and protocols for accepting and securing Plaintiff's and Class Members' PHI/PII had security and other vulnerabilities that placed Plaintiff's and Class Members' PHI/PII in jeopardy.

113.   As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and Class Members have suffered and will continue to suffer injury, as alleged herein, including but not limited to: (i) actual identity theft, (ii) the compromise, publication, and/or theft of their PHI/PII, (iii) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft and/or unauthorized use of their PHI/PII, (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate

the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft, (v) the continued risk to their PHI/PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PHI/PII in their continued possession, (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members, (vii) the diminished value of Plaintiff's and Class Members' PHI/PII, and (viii) the diminished value of Defendant's services for which Plaintiff and Class Members paid and received.

**COUNT FOUR**

**BREACH OF IMPLIED CONTRACT**

114.   Plaintiff realleges the allegations above as if fully set forth herein.

115.   Through their course of conduct, Defendant, Plaintiff and Class Members entered into implied contracts with Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PHI/PII.

116.   Defendant required Plaintiff and Class Members to provide and entrust their PHI/PII as a condition of obtaining Defendant's services.

117.   Defendant solicited and invited Plaintiff and Class Members to

provide their PHI/PII as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their PHI/PII to Defendant.

118.  As a condition of being Defendant's direct patients, Plaintiff and Class Members provided and entrusted their PHI/PII to Defendant. In so doing, Plaintiff and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen.

119.  A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their PHI/PII to Defendant, in exchange for, amongst other things, the protection of their PHI/PII.

120.  Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

121.  Defendant breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect their PHI/PII and by failing to provide timely and accurate notice to them that their PHI/PII was compromised because of the Data Breach. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Class Members have

suffered and will continue to suffer: (i) ongoing, imminent and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (ii) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (iii) loss of the confidentiality of the stolen confidential data, (iv) the illegal sale of the compromised data on the dark web, (v) lost work time, and (vi) other economic and non-economic harm.

## COUNT FIVE

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

122.   Plaintiff realleges the allegations above as if fully set forth herein.

123.   Every contract in this State has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

124.   Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendant.

125.   Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PHI/PII, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members, and continued acceptance of PHI/PII and storage of other personal information after Defendant knew or should have known of the security vulnerabilities of the systems that were exploited in the Data

Breach.

126.    Defendant acted in bad faith and/or with malicious motive in denying Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

## COUNT SIX

## BREACH OF FIDUCIARY DUTY

127.    Plaintiff realleges the allegations above as if fully set forth herein.

128.    In light of the special relationship between Defendant and Plaintiff and Class Members, whereby Defendant became the guardian of Plaintiff's and Class Members' PHI/PII, Defendant became a fiduciary by their undertaking and guardianship of the PHI/PII to act primarily for Plaintiff and Class Members, (i) for the safeguarding of Plaintiff's and Class Members' PHI/PII, (ii) to timely notify Plaintiff and Class Members of a data breach and disclosure, and (iii) to maintain complete and accurate records of what information (and where) Defendant has and continues to store.

129.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship with Class Members—in particular, to keep their PHI/PII secure.

130.    Defendant breached their fiduciary duties to Plaintiff and Class

Members by failing to diligently discover, investigate, and give notice of the Data

Breach in a reasonable and practicable period of time.

131.    Defendant breached their fiduciary duties to Plaintiff and Class

Members by failing to encrypt and otherwise protect the integrity of the systems

containing Plaintiff's and Class Members' PHI/PII.

132.    Defendant breached its fiduciary duties to Plaintiff and Class

Members by failing to timely notify and/or warn Plaintiff and Class Members of

the Data Breach.

133.    Defendant breached its fiduciary duties to Plaintiff and Class

Members by otherwise failing to safeguard Plaintiff's and Class Members' PHI/PII.

134.    As a direct and proximate result of Defendant's breaches of its

fiduciary duties, Plaintiff and Class Members have suffered and will continue to

suffer injury, including but not limited to: (i) actual identity theft, (ii) the

compromise, publication, and/or theft of their PHI/PII, (iii) out-of-pocket expenses

associated with the prevention, detection, and recovery from identity theft and/or

unauthorized use of their PHI/PII, (iv) lost opportunity costs associated with effort

expended and the loss of productivity addressing and attempting to mitigate the

actual and future consequences of the Data Breach, including but not limited to

efforts spent researching how to prevent, contest, and recover from identity theft,

(v) the continued risk to their PHI/PII, which remains in Defendant's possession

and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PHI/PII in their continued possession, (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members, and (vii) the diminished value of Defendant's services they received.

135.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## COUNT SEVEN

## UNJUST ENRICHMENT

136.    Plaintiff realleges the allegations above as if fully set forth herein. This Count is pled in the alternative to the Breach of Contract Count above.

137.    Upon information and belief, Defendant funds its data-security measures entirely from their general revenue, including payments made by or on behalf of Plaintiff and Class Members.

138.    As such, a portion of the payments made by or on behalf of Plaintiff and Class Members is to be used to provide a reasonable level of data security, and the amount of each payment allocated to data security is known to Defendant.

139.    Plaintiff and Class Members conferred a monetary benefit to

Defendant. Specifically, they purchased goods and services from Defendant and/or

their agents and provided Defendant with their PHI/PII. In exchange, Plaintiff and

Class Members should have received from Defendant the goods and services that

were the subject of the transaction and have their PHI/PII protected with adequate

data security.

140.    Defendant knew that Plaintiff and Class Members conferred a benefit

which Defendant accepted. Defendant profited from these transactions and used

the PHI/PII of Plaintiff and Class Members for business purposes.

141.    Defendant enriched itself by saving the costs it reasonably should

have expended in data-security measures to secure Plaintiff's and Class Members'

PHI/PII. Instead of providing a reasonable level of security that would have

prevented the hacking incident, Defendant instead calculated to increase their own

profits at the expense of Plaintiff and Class Members by utilizing cheaper,

ineffective security measures. On the other hand, Plaintiff and Class Members

suffered as a direct and proximate result of Defendant's decision to prioritize their

profits over the requisite security.

142.    Under the principles of equity and good conscience, Defendant should

not be permitted to retain the money belonging to Plaintiff and Class Members,

because Defendant failed to implement appropriate data management and security

measures mandated by industry standards.

143.    Defendant failed to secure Plaintiff's and Class Members' PHI/PII and,

therefore, did not provide full compensation for the benefit of Plaintiff and Class

Members.

144.    Defendant acquired the PHI/PII through inequitable means in that it

failed to disclose the inadequate security practices previously alleged.

145.    If Plaintiff and Class Members knew that Defendant had not

reasonably secured their PHI/PII, they would not have agreed to provide their

PHI/PII to Defendant.

146.    Plaintiff and Class Members have no remedy at law.

147.    As a direct and proximate result of Defendant's conduct, Plaintiff and

Class Members have suffered and will continue to suffer injury, including but not

limited to: (i) actual identity theft, (ii) the loss of opportunity to determine how

their PHI/PII is used, (iii) the compromise, publication, and/or theft of their PHI/PII,

(iv) out-of-pocket expenses associated with the prevention, detection, and recovery

from identity theft, and/or unauthorized use of their PHI/PII, (v) lost opportunity

costs associated with efforts expended and the loss of productivity addressing and

attempting to mitigate the actual and future consequences of the Data Breach,

including but not limited to efforts spent researching how to prevent, detect,

contest, and recover from identity theft, (vi) the continued risk to their PHI/PII,

which remains in Defendant's possession and is subject to further unauthorized

disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PHI/PII in their continued possession, and

(vii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the impact of the PHI/PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

148.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

149.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and each member of the proposed Class respectfully request that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1.     That the Court declare, adjudge, and decree that this action is a proper class action and certify each of the proposed Class and/or any other appropriate Class under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiff's counsel as Class Counsel;

2.     For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.     That the Court enjoin Defendant, ordering it to cease and desist from similar unlawful activities;

4.     For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PHI/PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

5.     For injunctive relief requested by Plaintiff, including but not limited to injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an Order:

        A.     prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

B.    requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards and federal, state or local laws;

C.    requiring Defendant to delete and purge Plaintiff's and Class Members' PHI/PII unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

D.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' PHI/PII;

E.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

F.    prohibiting Defendant from maintaining Plaintiff's and Class Members' PHI/PII on a cloud-based database;

G.    requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

H.    requiring Defendant to conduct regular database scanning and securing checks;

I.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PHI/PII, as well as protecting the PHI/PII of Plaintiff and Class Members;

J.    requiring Defendant to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as

randomly and periodically testing employees' compliance with Defendant's policies, programs and systems for protecting personal identifying information;

K.    requiring Defendant to implement, maintain, review and revise as necessary a threat management program to monitor Defendant's networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested and updated;

L.    requiring Defendant to meaningfully educate all Class Members about the threats they face as a result of the loss of their confidential PHI/PII to third parties, as well as the steps affected individuals must take to protect themselves.

6.    For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.    For an award of attorney's fees, costs, and litigation expenses, as allowed by law;

8.    For all other Orders, findings and determinations identified and sought in this Complaint.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury for all issues triable by jury.

Dated:  July 11, 2025.

Respectfully submitted,


_/s/ Richard M. Kemmer, III_
Richard M. Kammer, III
GA Bar No. 519905
KEMMER LAW, P.C.
820 Broadway
Columbus, GA 31902
(706) 322-2212
rkemmer@kemmerlawpc.com

Charles Barrett
CUNEO GILBERT & LaDUCA, LLP
4235 Hillsboro Pike
Suite 300
Nashville, TN 37215
(615) 293-7375
cbarrett@cuneolaw.com

Charles J. LaDuca
Brendan Thompson
CUNEO GILBERT & LaDUCA, LLP
2445 NW M St.
Suite 740
Washington, DC 20037
(202) 789-3960
charles@cuneolaw.com
brendant@cuneolaw.com

Robert K. Shelquist
CUNEO GILBERT & LaDUCA, LLP
5775 Wayzata Blvd.
Suite 620
St. Louis Park, MN 55416
(612) 254-7288
rshelquist@cuneolaw.com

_Attorneys for Plaintiff_